UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ALFREDO P. GALINDO,

        Plaintiff,

    v.

COMMISSIONER OF THE SOCIAL
SECURITYADMINISTRATION,

        Defendant**.**

Case No. 6:14-cv-01221-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Alfredo P. Galindo ("Galindo"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-1383f.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3).  All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).  For the reasons set forth below, that decision is AFFIRMED.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Galindo protectively filed for DIB and SSI on September 8, 2006, alleging a disability onset date of October 1, 2003. Tr. 81–89.[1] His applications were denied initially and on reconsideration. Tr. 36–49, 51–57. On September 14, 2009, a hearing was held before Administrative Law Judge ("ALJ") John J. Madden, Jr. Tr. 19–35, 344–61. The ALJ issued a decision on September 25, 2009, finding Galindo not disabled. Tr. 7–18. The Appeals Council denied a request for review on June 18, 2010. Tr. 1–3. Galindo then appealed that adverse decision to this court, and on March 7, 2012, this court issued an order of remand for further administrative proceedings. Tr. 384–407.

The Appeals Council vacated the ALJ's decision on August 2, 2013, and remanded the case to an ALJ for further proceedings consistent with the court's order. Tr. 410. ALJ S. Andrew Grace held a second hearing on February 26, 2014, and a supplemental hearing on May 6, 2014. Tr. 362–83. The ALJ issued a decision on May 20, 2014, finding Galindo not disabled. Tr. 322–43. Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court. 20 CFR §§ 404.981, 416.1481, 422.210.

## BACKGROUND

Born in 1980, Galindo was 29 years old at the time of the first hearing before the ALJ. Tr. 23, 81. He earned a GED and has past relevant work experience as a painter, newspaper jogger, cannery worker, dishwasher, nursery worker, and small products assembler. Tr. 28–30, 106, 365–66. Galindo alleges that he is unable to work due to the combined impairments of anxiety and depression. Tr. 105.

///

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on December 31, 2014 (docket #12).

2 – OPINION AND ORDER

## MEDICAL BACKGROUND

The relevant medical evidence is discussed at length in this court's review of the prior ALJ decision. However, Galindo received an additional psychological evaluation from Emil Slatick, Ph.D., in February 2014 which is discussed in detail below.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

3 – OPINION AND ORDER

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g); *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id*. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

As a preliminary finding, the ALJ found that Galindo met the insured status requirement through December 31, 2009. Tr. 328. At step one, the ALJ concluded that Galindo has not engaged in substantial gainful activity since October 1, 2003. *Id*.

At step two, the ALJ determined that Galindo has the severe impairments of generalized anxiety disorder, panic disorder, depressive disorder, and borderline intellectual functioning. *Id*.

At step three, the ALJ concluded that Galindo does not have an impairment or combination of impairments that meets or equals any of the listed impairments. *Id*. The ALJ found that Galindo has the RFC to perform a full range of work at all exertional levels, except he is limited to simple, repetitive, and routine tasks consistent with unskilled work; low-stress work which is defined as work requiring few decisions and few changes; tasks capable of one-on-one, hands-on demonstration rather than written instruction; and a standard or ordinary pace but not a strict, production rate pace. Tr. 330. Galindo may have no contact with the public and occasional contact with supervisors and the supervisor must "check in with Galindo one time per day for the first two months of employment to check on work product and to see if [Galindo] has any questions." *Id*.

Based upon the testimony of a vocational expert ("VE"), the ALJ determined at step four that Galindo's RFC did not preclude him from returning to work as a newspaper jogger and as a nursery laborer. Tr. 336. Alternatively, the ALJ found that Galindo can perform other jobs in the national economy, specifically an automobile detailer and a groundskeeper. Tr. 337.

Accordingly, the ALJ determined that Galindo was not disabled at any time through the date of the decision.

///

///

///

5 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'" *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), *quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035. We review the ALJ's final decision, not the previously vacated decision. *See Lombardo v. Schweiker*, 749 F2d 565, 567 (9th Cir 1984).

## DISCUSSION

Galindo contends that the ALJ erred by not following this court's instruction to account for his limitations found by Keli J. Dean, Psy.D., and by not properly crediting the opinion of Dr. Slatick.

**I.      Dr. Dean**

Dr. Dean completed a Neuropsychological Screening and Mental Residual Function Capacity Report in November 2006. Tr. 203–17. Among other findings, Dr. Dean found that Galindo was moderately limited in the category of "Social Interaction" in his abilities to "ask

simple questions or request assistance" and "accept instruction and respond appropriately to criticism from supervisors." Tr. 215–16.  In 2009, the ALJ concluded that Galindo had the RFC to work at all exertional levels, but was "limited to simple, routine tasks and no more than occasional contact with the general public." Tr. 14.  This court found that the ALJ erred when fashioning that RFC by not accounting "for the moderate limitations in social interaction found by Dr. Dean in [Galindo's] ability to ask simple questions or request assistance and in his ability to accept instructions and respond appropriately to criticism from supervisors." Tr. 406.  On remand, the ALJ was instructed to give specific and legitimate reasons if he rejected Dr. Dean's opinion that Galindo is limited in social interaction relating to supervisors, or, if he credited Dr. Dean's opinion, to include the limitation in a hypothetical to a vocational expert and the RFC assessment.  *Id.*

On remand, the ALJ assigned "significant" weight to Dr. Dean's opinion and accommodated his opinion about Galindo's "pacing as well as additional anxiety created by working around groups of people" in the RFC. Tr. 334.  As for Galindo's limitations in social interaction with supervisors, the ALJ added to the RFC a limitation of "occasional contact with supervisors" and a requirement that "a supervisor to check in with him one time per day for the first two months of employment to check on work production and to see if [Galindo] has questions."  *Id.*  Essentially, Galindo argues that the ALJ erred by selecting only some of Dr. Dean's limitations for inclusion in the RFC and ignoring the rest.

Dr. Dean found that Galindo's significant weaknesses in his "verbal composition, processing speed, mathematics, and memory skills are likely to have a negative impact on his ability to *learn and perform* job tasks without extra assistance." Tr. 212–13 (emphasis added).

7 – OPINION AND ORDER

Galindo contends that by limiting the need for enhanced supervision only to the first two months of employment, the RFC does not adequately incorporate his need for "extra assistance."

Galindo presents a reasonable interpretation of Dr. Dean's finding regarding his inability to "learn and perform job tasks without extra assistance." Galindo's limitations in verbal composition, processing speed, mathematics, and memory skills might require continual supervision while performing the job. Dr. Dean certainly did not opine that Galindo's need for assistance would diminish over time. However, her opinion specified "extra" assistance, not necessarily *daily* assistance for the life of his employment.

It is also reasonable to interpret her finding, as the ALJ did, to apply only to the early stages of employment, *i.e.* the first two months when Galindo is learning, practicing and then performing the job under close supervision. The two-month period of daily supervision required by the ALJ provides "extra assistance" beyond the period needed for job training. Galindo's past relevant work and the jobs identified by the ALJ are classified as SVP[2] 2 (unskilled work) which requires "anything beyond short demonstration up to and including 1 month" to learn the job. Dictionary of Occupational Titles ("DOT"), Appendix C, *available at* 1991 WL 688702. Under the RFC, Galindo would receive daily assistance not only during the first month while learning the job, but also during the second month while he is performing the job he recently learned. Dr. Dean found that Galindo was not significantly limited in sustaining "an ordinary routine without special supervision." Tr. 216. Therefore, it was reasonable for the ALJ to assume that Galindo would be able to continue performing an unskilled job with simple, repetitive, and routine tasks and low

---

[2] Specific Vocational Preparation (SVP) is defined as the amount of lapsed time required a typical worker to "learn the techniques, acquire the information, and develop the facility needed for average performance." Dictionary of Occupational Titles, Appendix C, *available at* 1991 WL 688702.

stress without daily supervision after two months of intensive or "extra" training and supervision. The ALJ's findings must be upheld "if supported by inferences reasonably drawn from the record" and "when the evidence is susceptible to more than one rational interpretation." *Tommasetti*, 533 F3d at 1038 (citations omitted).

Galindo also argues that the ALJ's two-month restriction contravenes the Commissioner's rule that functional limitations in the RFC are permanent, not temporary limitations. *See* 20 CFR §§ 404.1505, 416.905; *see also* SSR 96-8P, *available at* 1996 WL 374184, at *7 ("In assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis."). But the initial two-month assistance period in the RFC is not the only accommodation of Galindo's limitations in asking questions and requesting assistance. Those limitations are inherent in the restriction to unskilled work. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 CFR §§ 404.1568(a), 416.968(a). Moreover, the RFC does require occasional supervision, such that Galindo will have some continuing assistance without the need to seek help. Tr. 330. Taken as a whole, the RFC considers and incorporates Dr. Dean's finding that Galindo needs "extra assistance."

Galindo also contends that the RFC completely fails to reflect his inability to accept instruction and respond appropriately to criticism. *See* Tr. 216. Although the ALJ specifically considered Dr. Dean's moderate limitations in these areas when restricting Galindo to only occasional contact with supervisors, Galindo suggests they should instead be addressed with a restriction regarding the quality of supervision. In support, he points to the Minnesota Multiphasic Personality Inventory ("MMPI-II") which indicated that he "may

be hypersensitive to how others viewed him and require increased support and attention in interpersonal relationships." Tr. 211–12. Dr. Dean also noted that Galindo would benefit from "a supportive work environment or supportive supervisors providing increased support and attention" and "frequent positive feedback . . . when learning new skills." Tr. 213.

However, as the Ninth Circuit explained in *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F3d 685, 691–92 (9th Cir 2009), it is not error for the ALJ to omit limitations in a doctor's opinion that are not expressed as functional restrictions. It is the ALJ's responsibility to construct an RFC responsive to Dr. Dean's findings. *See* 20 CFR §§ 404.1546(c), 416.946(c). The Ninth Circuit found that notations in the section of the doctor's report entitled "Recommendations" were "neither a diagnosis nor a statement of . . . functional capacity" because the doctor did not indicate that the applicant was "incapable of working *except* under the recommended conditions." *Id* at 691–92. Similarly, Dr. Dean's assessment of working conditions that may aid Galindo, such as frequent and positive feedback, were recommendations made to the Vocational Rehabilitation Services and were not posited as limitations that prevent him from competitive employment. The RFC adequately incorporates Dr. Dean's findings of "moderate limitations in social interaction" as required by the court's order.

For these reasons, the ALJ did not fail to comply with the court's order regarding Dr. Dean's opinion.

## II.    Dr. Slatick

On February 18, 2014, Dr. Slatick completed a Psychological Evaluation Report and a Mental Residual Function Report. Tr. 584–92. As did Dr. Dean, Dr. Slatick found that Galindo is markedly limited in his ability to understand, remember, and carry out detailed instructions.

*Compare* Tr. 215–16 *with* Tr. 591–92.  But unlike Dr. Dean, Dr. Slatick also found Galindo was markedly limited in the following areas:  the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;" and the "ability to set realistic goals or make plans independently of others."[3]  Tr. 591–92.  The ALJ gave only "limited weight" to Dr. Slatick's opinion "because it is not supported by objective evidence."  Tr. 335.  Accordingly, the ALJ credited Dr. Slatick's opinion only to limit Galindo to "simple, repetitive, and routine tasks consistent with unskilled work, in addition to the limitation to low stress work (defined as work requiring few decisions and few changes)."  *Id.*

Disability opinions are reserved for the Commissioner.  20 CFR §§ 404.1527(e)(1), 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).  The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Orn v. Astrue*, 495 F3d 625, 632 (9th Cir 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons.  *Id* (treating physician); *Widmark v. Barnhart*, 454 F3d 1063, 1067 (9th Cir 2006) (examining physician).  Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F3d at 632; *Widmark*, 454 F3d at 1066.

---

[3] The only other category in which Dr. Dean founded that Galindo was markedly limited was the "ability to remember locations and work-like procedure."  Tr. 215.

11 – OPINION AND ORDER

Galindo argues that his inability to maintain regular attendance and punctuality, as opined by Dr. Slatick, renders him disabled and that the ALJ erred by rejecting that portion of Dr. Slatick's opinion. Because Dr. Slatick's opinion is contradicted by the opinion of at least one other examining physician, the ALJ was required to provide specific and legitimate reasons for rejecting it.

The Commissioner argues that any error committed by the ALJ in his treatment of Dr. Slatick's opinion is harmless because he incorporated it into the RFC by "limiting [Galindo] to simple, repetitive, and routine tasks consistent with unskilled work, in addition to the limitation to low stress work (defined as work requiring few decisions and few changes)." Tr. 335. However, these aspects of the RFC do not account for Dr. Slatick's opinion that Galindo has a limited ability to maintain regular attendance and punctuality.

The Commissioner further argues that the lack of objective medical evidence is a specific and legitimate reason to give only limited weight to Dr. Slatick's opinion. As an example of that lack of objective medical evidence, the ALJ cited Galindo's report to Dr. Slatick "that he had panic attacks ten times a year for which he sought emergency department treatment." Tr. 335, citing Tr. 589. However, as the ALJ correctly stated, the "emergency department treatment records do not substantiate this claim." Tr. 335; *see* Tr. 166–200, 524–52.

In addition, the ALJ found that Galindo "is less than fully credible" (Tr. 335) which Galindo does not challenge. An ALJ may discredit a treating physician's opinion if it is largely based on uncritically accepted, incredible, and subjective claimant reports rather than objective medical findings. *Cotton v. Astrue*, 374 F App'x 769, 771 (9th Cir 2010); *see also Morgan v. Comm'r of Soc. Sec.*, 169 F3d 595, 600-02 (9th Cir 1999) (the opinion of a physician that is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations

may be disregarded where those complaints have been 'properly discounted'"). Galindo reported to Dr. Slatick that he first experienced anxiety 13 years earlier, leading to random and unpredictable panic attacks approximately 10 times a year which render him "completely non-functional" for three days to a week at a time and require emergency medical treatment.  Tr. 585.  It is reasonable to assume that Dr. Slatick's conclusions about Galindo's ability to participate in a regular work schedule were based in part on his discredited report about the frequency and severity of his anxiety attacks requiring medical treatment.

Although Dr. Slatick relied in part on Galindo's unsubstantiated report, he also relied on his observations, review of psychiatric and medical records, and objective intelligence and psychological testing.  Tr. 584, 587–88.  He concluded that the "[p]revious evaluations and current psychological testing are consistent with [Galindo's] reports of symptoms." Tr. 589.  Galindo's scores on the MMPI II were representative of individuals who tend to feel depressed, sad, or despondent; are socially introverted and dislike parties or other group activities; are anxious and lack confidence in their own abilities; lack energy to cope with everyday activities; view the world as a threatening place; and may respond to stress by withdrawing into fantasy.  Tr. 588–89.

The objective testing and the weight of consistent medical evidence in the record certainly support Dr. Slatick's opinion that Galindo suffers from anxiety.  However, they do not support a finding that Galindo's anxiety is so severe that he is unable to conform to a regular work schedule.  That finding is entirely based on Galindo's account of how often he experiences debilitating anxiety attacks and how long the episodes last, not reported elsewhere in the record. This is clear from Dr. Slatick's discussion of the frequencies of Galindo's anxiety in this summary:

13 – OPINION AND ORDER

> [Galindo] reports a history of anxiety which began 13 years ago in the form of a severe anxiety episode characterized by extreme panic, fear, and paranoia which led to a significant decline in functioning for approximately one month. While he appears to have experienced generalized anxiety on a persistent basis since that time, he also continues to have intermittent episodes of heightened anxiety which cause him to seek emergency medical treatment and can last anywhere from three days to a week at a time. These subsequent episodes also cause a decline in functioning; similar to that of his initial episode. These anxiety episodes do not appear to be triggered by external events and their onset is, therefore, unpredictable. He also reports briefer panic attacks which tend to occur when he is in public and can leave him unable to complete day to day tasks such as grocery shopping. Previous evaluations and current psychological testing are consistent with [Galindo's] report of symptoms and he does not appear to be experiencing improvement over time.

Tr. 589.

Without relying on Galindo's discredited self-reporting and without confirming medical records, the testing alone does not support Dr. Slatick's finding that Galindo's anxiety causes marked limitations in his inability to maintain regular attendance and punctuality.

Another reason given by the ALJ for giving only "limited weight" to Dr. Slatick's opinion is that Galindo "has never participated in any therapy" and that his "only recent medical treatment has been for routine medication refills." Tr. 335. However, Dr. Slatick formed his opinion based on his review of Galindo's previous psychological evaluations, including Dr. Dean's recommendation that Galindo receive mental health therapy in addition to medications. Tr. 214. In fact, Dr. Slatick specifically noted that Galindo's treatment "has been limited to antidepressant medication and, while reportedly helpful, is insufficient in managing his symptoms" and recommended regular mental health counseling. Tr. 589–90. He also noted Galindo's report that he had once seen a counselor for a single session and would like to see a counselor on a regular basis. Tr. 586. A claimant's "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is

grounds for discrediting a claimant's credibility. *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996). However, it does not provide a legitimate reason to reject a physician's opinion. Nonetheless, any error in relying on Galindo's lack of participation in mental health therapy to reject some of Dr. Slatick's findings is harmless because the ALJ provided other specific and legitimate reasons for discrediting the opinion of Dr. Slatick.

## ORDER

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

DATED November 13, 2015.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge